IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
2:11cv37

| | | |
|---|---|---|
| J&P DICKEY REAL ESTATE<br>FAMILY LIMITED PARTNERSHIP,<br>et al., | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | ORDER |
| NORTHROP GRUMMAN GUIDANCE<br>& ELECTRONICS COMPANY, INC.,<br>et al. | )<br>)<br>) | |
| Defendants. | )<br>) | |

Pending before the Court is Defendants' Motion to Dismiss [# 24]. Plaintiffs brought this action against Defendants asserting a number of claims arising out of the alleged contamination of Plaintiffs' property. Defendants now move the Court to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Court GRANTS in part and DENIES in part the motion [# 24].

I. Background

A. The Parties to this Dispute

Plaintiff J&P Dickey Real Estate Family Limited Partnership ("J&P") is a Georgia limited partnership that owns a parcel of property located in Cherokee County, North Carolina. (Pls.' Compl. ¶¶ 1, 7.) Plaintiffs Jerry L. Dickey and P-Nut Dickey (collectively, the "Individual Plaintiffs") are citizens of Cherokee County, North Carolina and the predecessors in title of Plaintiff J&P's property. (Id. ¶¶ 2, 9.) Plaintiffs gained partial ownership of this property in 1999 and acquired full ownership by 2004. (Ex. 1 to Defs.' Mot.

1

Dismiss at p. 2-7.)

Defendant Northrop Grumman Guidance and Electronics Company, Inc. ("Northrop Grumman") is a Delaware corporation. (Pls.' Compl. ¶ 3.) Defendant Northrop Grumman acquired a parcel of property known as the Clifton Precision Site in 1966.[1] (Id. ¶¶ 4, 13.) Plaintiffs' property is located approximately .06 miles from the Clifton Precision Site and adjoins Slow Creek. (Id. ¶ 18.)

Defendant Moog, Inc. is a New York corporation and the current owner of the Clifton Precision Site. (Id. ¶¶ 5-6, 8.) Defendant Moog acquired the site and its manufacturing facility in 2003. (Ex. 2 to Defs.' Mot. Dismss ¶ 23.)

B.  The Alleged Environmental Contamination

Approximately a year after acquiring the Clifton Precision Site, Defendant Northrop Grumman began operating an electronic components manufacturing plant on this site. (Pls.' Compl. ¶ 16.) Part of the manufacturing process at this plant involved the use of chemicals. (Id. ¶ 15.) In order to contain the hazardous chemicals, including tetrachloroethene and trichloroethylene, Defendant Northrop Grumman installed several underground storage and treatment tanks. (Id. ¶ 19.) These tanks leaked, which resulted in the discharge of hazardous chemicals into Slow Creek and the groundwater. (Id. ¶¶ 20, 22.) In addition, the storage and treatment pits at the Clifton Precision Site also resulted in the discharge of hazardous chemicals into the ground. (Id. ¶ 21.) As a result of these leaks and the discharge of chemicals, Plaintiffs contend that Slow Creek, the ground water, and the soil on and around the Clifton Precision Site are contaminated, and that the contamination migrated to Plaintiffs' property. (Id. ¶¶ 23-24, 26.)

---

[1] Although Litton Systems, Inc. was the entity that acquired the Clifton Precision Site, Defendant Northrop Grumman subsequently acquired Litton Systems, Inc. (Pls.' Compl. ¶ 3-4; Ex. 2 to Defs.' Mot. Dismiss at ¶ 22.) The Court, therefore, has used Northrop Grumman and Litton Systems Inc. interchangeably in this Order.

Plaintiffs further allege that the migration of hazardous chemicals from the Clifton Precision Site to their property has devalued the property, rendered it unmarketable, and interfered with their use and enjoyment of the property. (Id. ¶ 30.) The Individual Plaintiffs also allege that they have been exposed to harmful levels of hazardous chemicals that has resulted in "permanent and debilitating illnesses." (Id. ¶ 32.)

    C.    EPA Ordered Remediation

While conducting the closure of one of the underground tanks on the site in 1986, Defendant Northrop Grumman discovered that the groundwater was contaminated. (Ex. 2 to Defs.' Mot. Dismiss at ¶¶ 29-30.) Defendant Northrop Grumman notified the State of North Carolina, Department of Environment and Natural Resources of the contamination. (Id. ¶ 30.) On April 27, 1988, Defendant Northrop Grumman entered into an Administrative Order on Consent with the Environmental Protection Agency to perform remediation at the site. (Id. ¶ 34; Pls.' Compl. ¶ 28.) As part of this Administrative Order on Consent, Defendant Northrop Grumman agreed to implement a comprehensive groundwater monitoring and remediation plan and program. (Ex. 2 to Defs.' Mot. Dismiss at ¶¶ 46-47; Pls.' Compl. ¶ 30.) This remediation has been ongoing since 1988. (Ex. 2 to Defs.' Motion Dismiss at ¶¶ 34-47.)

    D.    The Claims Asserted in Plaintiff's Complaint

As a result of the alleged migration of hazardous chemicals onto Plaintiffs' property, Plaintiffs brought this case in Superior Court of Cherokee County, North Carolina on September 13, 2011. The Complaint asserts eight claims against Defendants, including: (1) violation of the North Carolina Oil Pollution and Hazardous Substances Control Act; (2) violation of the North

3

Carolina Groundwater Classification and Standards; (3) a claim under the Comprehensive Environmental Response Compensation and Liability Act for response costs; (4) violation of the Resource Conservation and Recovery Act; (5) negligence per se; (6) negligence; (7) trespass; and (8) nuisance. (Pls.' Compl. ¶¶ 33-73.) Subsequently, Defendants removed the case to this Court.

After removing the case to federal court, Defendants moved to dismiss the Complaint in its entirety on November 22, 2011. Plaintiffs, however, failed to file a response to the Motion to Dismiss. Accordingly, the Court entered an Order directing Plaintiffs, who are represented by counsel, to respond to the Motion to Dismiss by December 23, 2011. (Order, Dec. 19, 2011.) The Court also warned Plaintiffs that the failure to file a response would result in the Court deeming the claims asserted against Defendants waived and dismissing the Complaint with prejudice. (Order, Dec. 19, 2011.) Plaintiffs then filed a Response to Defendants' Motion to Dismiss ("Pls.' Resp."). Plaintiffs, however, failed to respond to Defendants' Motion to Dismiss to the extent it sought dismissal of a number of Plaintiffs' claims. Defendants' motion is now properly before the Court.

II.   Legal Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering a defendant's motion to dismiss, the Court accepts the allegations in the complaint as true and construes them in the light most favorable to plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare

4

assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The complaint need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007); see also Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009).

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. ___, 129 S. Ct. at 1949; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that the defendants acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claims from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.[2]

---

[2] Plaintiffs contention that this Court should apply the North Carolina standard for ruling on a motion to dismiss is without merit, as the law is clear that after removal of an action from state court, the case proceeds as if it was originally brought in federal court, and the case will be governed by the Federal Rules of Civil Procedure. 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, Federal Practice and Procedure § 3738 (4th ed. 2009).

5

III.  Analysis

A.  Plaintiffs have Abandoned Counts Two, Four, and Five

In its prior Order, the Court warned Plaintiffs that the failure to respond to Defendants' Motion to Dismiss would result in the Court deeming the claims waived and dismissing the claims with prejudice.  Although Plaintiffs filed a response to the Motion to Dismiss, they failed to address Defendants' motion as to their claims for negligence per se, violation of the Resource Conservation and Recovery Act, and violation of the North Carolina Groundwater Classification and Standards.  Accordingly, the Court deems these claims abandoned because Plaintiffs have waived any opposition to Defendants' motion by failing to fully comply with the Court's Order.  See generally, Brand v. N.C. Dep't of Crime Control and Pub. Safety, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) (finding that by failing to respond to motion for summary judgment on hostile work environment claim, plaintiff conceded that the hostile work environment claim failed to state a claim); Straszheim v. Gerdau Ameristeel U.S., Inc., No. 3:08cv602, 2010 WL 883665, at *3 (W.D.N.C. Mar. 5, 2010) (Conrad, C.J.); Jimoh v. Charlottee-Mecklenburg Hous. P'ship, Inc., 2010 WL 1924480, at *3 (W.D.N.C. May 12, 2010) (Conrad, C.J.); Adams v. White, No. 1:11cv323, 2011 WL 3875422 (E.D. Va. Aug. 31, 2011).  The Court GRANTS the motion [# 24] as to Counts Two, Four, and Five.

B.  Plaintiffs' Oil Pollution and Hazardous Substances Control Act Claim

Count One asserts a claim for damages against Defendant Northrop Grumman pursuant to the Oil Pollution and Hazardous Substances Control Act ("OPHSCA").  The OPHSCA makes it unlawful:

6

> for any person to discharge, or cause to be discharged, oil or other hazardous substances into or upon any waters, tidal flats, beaches, or lands within this State, or into any sewer, surface water drain or other waters that drain into the waters of this State, regardless of the fault of the person having control over the oil or other hazardous substances, or regardless of whether the discharge was the result of intentional or negligent conduct, accident or other cause.

N.C. Gen. Stat. § 143-215.83. A "hazardous substance" within the meaning of the OPHSCA includes any of the chemicals included on the list of hazardous substances set out in 40 C.F.R. § 116.4. See N.C. Gen. Stat. § 143-215.77A; 33 U.S.C. § 1321(b)(2)(A); 40 C.F.R. § 116.4; Rudd v. Electrolux Corp., 982 F. Supp. 355, 362 (M.D.N.C. 1997).

The OPHSCA defines "discharge" as:

> any emission, spillage, leakage, pumping, pouring, emptying, or dumping of oil or other hazardous substances into waters of the State or into waters outside the territorial limits of the State which affect lands, waters or uses related thereto within the territorial limits of the State, or upon land in such proximity to waters that oil or other hazardous substances is reasonably likely to reach the waters, but shall not include amounts less than quantities which may be harmful to the public health or welfare as determined pursuant to G.S. 143-215.77A

N.C. Gen. Stat. § 143-215.77(4). A quantity is harmful within the meaning of the OPHSCA where the quantity of substance released equals the threshold amount set forth in 40 C.F.R. § 117.3. Rudd, 982 F. Supp. at 363-64. Defendants contend that Plaintiffs have not stated a claim under the OPHSCA because they have failed to set forth the particular hazardous chemicals discharged or the amount of chemicals released. (Defs.' Mot. Dismiss at p. 12.)

The Court finds that the Complaint sufficiently sets forth both the identity of the alleged hazardous chemicals discharged as well as the amount of chemicals discharged. Specifically, the Complaint alleges that the following chemicals were discharged by Defendant Northtop Grumman: 1-

7

trichloroethylene, 2-transdichloroethylene, perchloroethylene, chloroform, and carbon tetrachloride (Pl.'s Compl. ¶ 23), at least one of which is a hazardous substance within the meaning of the OPHSCA, see 40 C.F.R. § 116.4. The Complaint also alleges that the amount of these chemicals discharged exceeded the compliance standards established by the EPA. (Pls.' Compl. ¶¶ 23 28.) Although Plaintiff will ultimately have the burden of proving that a hazardous substance was actually discharged in an amount equal to the threshold amount set forth in 40 C.F.R. § 117.3, Plaintiffs have set forth sufficient factual allegations to state a claim. Accordingly, the Court DENIES Defendants' motion [# 24] as to Count One.

### C. Plaintiffs' Comprehensive Environmental Response Compensation and Liability Act Claim

Count Three asserts a claim for the recovery of response costs under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). CERCLA allows certain individuals to bring an action to recovery any "necessary costs of response incurred by any other person consistent with the national contingency plan" as well as any "damages for injury to, destruction of, or loss of natural resources." 42 U.S.C.§ 9607(a)(4)(B), (C). In order to prevail on their CERCLA claim, Plaintiffs will have to show the release or threatened release of a hazardous substance from the Clifton Precision Site caused Plaintiffs to incur response costs that are consistent with the National Contingency Plan. White v. County of NewBerry, 985 F.2d 168, 172, 174 (4th Cir. 1993); see also The Sherwin-Williams Company v. Artra Group, Inc. 125 F. Supp. 2d 739, 751 (D. Md. 2001). Defendants only challenge the final element of a CERCLA claim,

arguing that the Complaint fails to sufficiently allege that Plaintiffs incurred response costs consistent with the National Contingency Plan. (Defs.' Mot. Dismiss at p. 7-9.)

The Complaint alleges that Plaintiffs "incurred response costs that are consistent with the National Contingency Plan. Such response cost included but are not limited to, expenses for testing of ground water and soil and surveillance." (Pls.' Compl. ¶ 48.) Plaintiffs, however, must allege more than a formalistic recitation of the elements of a CERCLA claim to state a claim in federal court. See Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. The Complaint contains no factual allegations supporting the claim that the soil and water testing and surveillance are consistent with the National Contingency Plan. Absent supporting factual allegations supporting this element of a CERCLA claim, the claim is subject to dismissal. See Ford Motor Co. v. Mich. Consol. Gas. Co., No. 08cv13503-DT, 2010 WL 3419502, at *5-6 (E.D. Mich. Aug. 27, 2010); Franciso-Sanchez v. Esso Standard Oil de Puerto Rico, Inc., No. 08-2151, 2010 WL 682542, at * 4 (D.P.R. Feb. 22, 2010). The Court GRANTS the motion [# 24] as to Count Three.

    D.    Plaintiffs' Claim for Trespass

Count Seven of the Complaint asserts a claim for trespass against Defendants Northrop Grumman and Moog. North Carolina law defines trespass as the unauthorized entry upon the land of another. Hoffman v. Vulcan Materials Co., 91 F. Supp. 2d 881, 887 (M.D.N.C. 1999); Singleton v. Haywood Elec. Membership Corp., 588 S.E.2d 871, 874 (N.C. 2003). In order to state a claim for trespass, a plaintiff must allege: (1) possession of the property when the alleged trespass was committed; (2) an unauthorized entry upon the property by defendant; and (3) damages. Singleton, 588 S.E.2d at

9

874; Shepard v. Bonita Vista Props., L.P., 664 S.E.2d 388, 399 (N.C. Ct. App. 2008).  The Complaint alleges that Plaintiff was in possession of the property when chemicals spread from Defendants' property onto Plaintiffs' property, which resulted in damages.  (Pls.' Compl. ¶¶ 29, 65-69.)  The Complaint specifically alleges that the migration of these chemicals from Defendants' property to Plaintiffs' property is ongoing.  (Id. ¶ 29.)  These factual allegations are sufficient to state a claim for trespass.  Although Defendants may be able to demonstrate that any such trespass occurred prior to Plaintiffs' purchase of the property, this is a factual question for either summary judgment or trial.  The Court DENIES the motion [# 24] as to Count Seven.

E.   Plaintiffs' Claim for Nuisance

Count Eight of the Complaint asserts a claim for nuisance against Defendants Northrop Grumman and Moog.  In order to prevail on their claim for nuisance under North Carolina law, Plaintiffs must demonstrate "an unreasonable interference with the use and enjoyment of their property." Jordon v. Foust Oil Co., Inc., 447 S.E.2d 491, 498 (N.C. Ct. App. 1994); see also Whiteside Estates, Inc. v. Highlands Cove, L.L.C., 553 S.E.2d 431, 455 (N.C. Ct. App. 2001).  The Complaint alleges that Defendants maintain the Clifton Precision Site in a manner that unreasonably interferes with their use and enjoyment of the property as a result of the release of hazardous chemicals on the Clifton Precision Site, which have traveled to Plaintiffs' property.  (Pls.' Compl. ¶¶ 19-24 , 29, 70-73.)  The Complaint specifically alleges that the migration of these chemicals from Defendants' property to Plaintiffs' property is ongoing.  (Id.  ¶ 29.)  Such allegations are sufficient to state a claim for nuisance under North Carolina law.  The Court DENIES the

10

motion [# 24] as to Count Eight.

F. The Statutes of Limitations and Repose

The three year statute of limitation found in N.C. Gen. Stat. § 1-52(2) applies to Plaintiffs' OPHSCA claim. Wilson v. McLeod Oil Co., Inc., 298 S.E.2d 586, 596 (N.C. 1990); James v. Clark, 454 S.E.2d 826, 829 (N.C. Ct. App. 1995). The three year statute of limitations set forth in N.C. Gen. Stat. § 1-52 also applies to a claim of nuisance and trespass. Wilson, 398 S.E.2d at 511; Robertson, 497 S.E.2d 300, 302 (N.C. Ct. App. 1998); Crawford v. Boyette, 464 S.E.2d 301, 303 (N.C. Ct. App. 1995). Finally, Plaintiffs' negligence claim is governed by the three year statute of limitations in § 1-52(5). Wilson, 398 S.E.2d at 512.

In addition, N.C. Gen. Stat. § 1-52(16) provides that:

> Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action . . . shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

The provisions of N.C. Gen. Stat. § 1-52(16), including the ten year statute of repose, apply to Plaintiffs' claims. See Wilson, 398 S.E.2d at 513; Hodge, 631 S.E.2d at 144-45; Crawford, 464 S.E.2d at 303-4. "The plain language of the statute indicates that in cases involving property damage, no cause of action may be brought more than ten years after the defendant's last act or omission." Hodge, 631 S.E.2d at 145. "A complaint which seeks to impose liability upon a previous landowner or operator for adjoining land contamination constitutes an action for physical damage to claimant's property, and is thus governed by N.C. Gen. Stat. § 1-52(16)." Id.

11

Plaintiffs contends that the statute of limitations for each of these claims began running in 2007 when it first learned of the contaminated ground water on their property. In contrast, Defendants contend that the existence of the EPA Order put Plaintiffs on notice of the potential claims as early as 1988. Defendants, however, have not cited the Court to any North Carolina authority supporting their position. Although Defendants may prevail at the summary judgment stage on their statute of limitations argument, the Court cannot say as a matter of law that the contamination on their property was apparent or ought to have been reasonably apparent to Plaintiffs prior to 2007 based on the allegations in the Complaint and the record before the Court. Similarly, there is insufficient evidence before the Court to find that as a matter of law no recurring trespass occurred in this case. The statute of limitations argument made by Defendants is fact intensive and more appropriate for a motion for summary judgment. Defendants may renew their statute of limitations argument at the summary judgment stage when there is evidence in the record for the Court to consider.

Similarly, the Court cannot hold as a matter of law that the claims are barred by the statute of repose. Like Defendants' statute of limitations argument, whether or not the statute of repose bars Plaintiffs' claims involves factual questions that are not appropriate at the motion to dismiss stage. Unlike the situation in <u>Waldburger v. CTS Corporation</u>, No. 1:11cv39, 2011 WL 7153937, at *3 (W.D.N.C. Oct. 4, 2011) (Howells, Mag. J.), Defendants did not sell the property more than ten years before Plaintiffs brought this suit. Put simply, it is not clear from the allegations in the Complaint and the record before the Court that the last act or omission of the Defendants giving rise to the state law causes of action occurred more than ten years prior to

12

Plaintiffs filing their Complaint. In fact, the Complaint alleges that the migration of the hazardous chemicals is still ongoing.[3] Accordingly, the Court DENIES the motion [# 24] as to the statute of limitations and the statute of repose arguments. Defendants may renew these arguments at the summary judgment stage.

G.  Plaintiffs' Claims for Injunctive Relief

Finally, to the extent that Plaintiffs seek an Order from this Court directing Defendants to remove hazardous materials from their property, the Clifton Precision Site, and Slow Creek, such relief is preempted by the EPA's Consent Order. See Feikema v. Texaco, Inc., 16 F.3d 1408, 1416 (4th Cir. 1994). Accordingly, the Court GRANTS the motion to dismiss [# 24] as to Plaintiffs' requests for injunctive relief.

IV.  Conclusion

The Court GRANTS in part and DENIES in part the Motion to Dismiss [# 24] The Court GRANTS the motion as to Counts Two, Three, Four, and Five, as well as Plaintiffs' requests for injunctive relief. The Court DENIES the motion as to the remaining claims.

Signed: March 19, 2012

Dennis L. Howell
United States Magistrate Judge

---

[3] In making factual allegations such as these in the Complaint, Counsel for Plaintiffs is bound by the requirements of Rule 11 of the Federal Rules of Civil Procedure.

13